**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

In re:

CELESTINE SPRIGGS,

Debtor.

Case No. 25-11995-BFK
Chapter 13

**MEMORANDUM OPINION AND**
**ORDER OF PUBLIC REPRIMAND**

This matter comes before the Court on the Court's Order to Show Cause Why: (A) the Bankruptcy Case Should Not be Dismissed; and (B) Counsel Should Not be Sanctioned. Docket No. 34. The Court has entered a separate Order dismissing this case without prejudice but retaining jurisdiction over the Order to Show Cause. Docket No. 42. The Court heard the evidence and the parties' arguments on December 18, 2025. For the reasons stated below, the Court will issue a public reprimand to Edward J. Grass of The Grass Law Firm, LLC.

**FINDINGS OF FACT**

The Court, having heard the evidence, makes the following findings of fact:

*A. The Debtor's Pre-Petition Sales Contract and Lease.*

1.      The Debtor, Celestine Spriggs, resides at 212 E. Staunton Avenue Sterling, VA 20164 ("the Property"). She is elderly, but does not appear to suffer from any cognitive difficulties nor any inability to communicate.

2.      Ms. Spriggs has resided in her home for 22 years. She has one mortgage, with Shellpoint. Ms. Spriggs testified that the principal balance on this mortgage was approximately $129,000.00.

3.      Ms. Spriggs further testified that, in her opinion, the value of her home was approximately $500,000.00.

4.      In late 2024, she began to have payment issues with Shellpoint. She asserted that she had only missed one payment, in 2018, but that Shellpoint was insisting that she had missed multiple payments. She further testified that Shellpoint was unresponsive to her multiple inquiries concerning her payment history.

5.      In September 2025, Shellpoint sent Ms. Spriggs a notice of foreclosure.

6.      Shortly thereafter, Ms. Spriggs was contacted by Brandon Hackett of Samson Properties. Ms. Spriggs then met with Mr. Hackett and Charlie Einsman of Clear Sky Properties ("Clear Sky"). Mr. Hackett and Mr. Einsman offered to buy Ms. Spriggs' home. They told her that, with their purchase of the home, she could reside there for the rest of her life.

7.      Clear Sky is a client of Mr. Grass and his law firm.

8.      On September 13, 2025, Ms. Spriggs signed a Real Estate Sales Contract for her property, with "Homes with Hatch, LLC And/Or Assigns" as the purchaser. Grass Ex. 1.

9.      The purchase price was $300,000.00. *Id*., ¶ 1.

10.     The Contract further provided:

Seller to have a Life Tenancy @ $1,500.00 a month from October 1, 2025, to September 30, 2028. Starting October 1, 2028, monthly rent becomes Market Rent. The Life Tenancy ends upon a death event or the vacancy by Celestine Spriggs.

*Id*., ¶ 25.

11.     On September 23, 2025, Homes with Hatch assigned the Contract to Clear Sky Properties, LLC, for an assignment fee of $25,000.00. Trial Ex. 3.

12.     On September 26, 2025, Ms. Spriggs and Clear Sky entered into a Lease for the

Property. Trial Ex. 2.[1] The Lease was for three years at a monthly rental of $1,500.00 per month.

*Id.* ¶¶ 1, 3. A lease Addendum provides that the Lease "shall be renewed at the tenant's discretion

every year thereafter. The rate will adjust to the market rate in each year of renewal." *Id.* Lease

Addendum.

13.     Meanwhile, Shellpoint was proceeding with its foreclosure. According to Mr.

Grass's testimony, Shellpoint was being uncooperative, and Ms. Spriggs and Clear Sky could not

obtain a payoff figure from Shellpoint for purposes of a closing on the Property.

14.     Ms. Spriggs testified that Mr. Einsman advised her that she needed to file for

bankruptcy to protect her Property from a foreclosure. Mr. Einsman referred her to Mr. Grass.

*B.   The Debtor Files for Bankruptcy Protection.*

15.     On September 29, 2025, Mr. Grass received a call from Mr. Hackett. Mr. Hackett

advised Mr. Grass that a scheduled foreclosure was imminent, and that Ms. Spriggs needed to file

an emergency bankruptcy petition.

16.     Mr. Grass's and Ms. Spriggs testimony differ on whether Mr. Grass and Ms. Spriggs

spoke on the telephone before the petition was filed. Ms. Spriggs testified that she only spoke with

Mr. Hackett and Mr. Einsman; Mr. Grass testified that he spoke with Ms. Spriggs numerous times

before the petition was filed.[2]

17.     In any event, Mr. Grass emailed a Voluntary Petition under Chapter 13 to Ms.

Spriggs. She signed it and sent it back to him.

---

[1] Trial Ex. 2 appears to have been signed by Clear Sky, but not by Ms. Spriggs. Ms. Spriggs did not dispute the authenticity of the Lease at the hearing in this case.

[2] Ultimately, the Court need not resolve this dispute in the evidence. The Court concludes that neither party was being untruthful in their testimony. Rather, the parties simply have differing recollections.

18.      Mr. Grass filed the Petition for Ms. Spriggs at 11:54 a.m. on September 29, 2025.

Docket No. 1.

19.      The Shellpoint foreclosure was stayed by the automatic stay.

20.      Mr. Grass did not receive a retainer from Ms. Spriggs.

21.      Ms. Spriggs did not take credit counseling before she filed her petition. Rather, she

checked the box that stated:

> I certify that I asked for credit counseling services from an approved agency,
> but was unable to obtain those services during the 7 days after I made my request,
> and exigent circumstances merit a 30-day temporary waiver of the requirement.

Voluntary Petition, ¶ 15.

22.      Mr. Grass testified, credibly, that he had no idea that his client, Clear Sky, was the

Assignee of the Contract, or was in any way involved with the sale of the Property until he was

advised by the Chapter 13 Truste of the completed sale of the Property, described below.

*C.  Mr. Grass Withdraws, and Mr. Martin Steps In.*

23.      On October 8, 2025, Ms. Spriggs and Clear Sky went to closing on the Property. A

General Warranty Deed was recorded in the land records of Loudoun County, in which Ms. Spriggs

conveyed the Property to Clear Sky. Trial Ex. 1.

24.      The Court did not authorize the sale. No motion was filed for approval of the sale.

25.      Ms. Spriggs did not know of the Bankruptcy Code and Rules requirements that

sales be approved before property of the estate can be sold.

26.      The Chapter 13 Trustee researched Ms. Spriggs' Property online and found that it

had been sold post-petition, without Court approval. He called Mr. Grass and advised him of the

same.

27.     Mr. Grass testified, again credibly, that he did not know that Ms. Spriggs had gone to closing on the Property until he received a call from the Chapter 13 Trustee advising him of the closing.

28.     Mr. Grass filed a Motion to Dismiss the bankruptcy case voluntarily (it is not clear to the Court whether Mr. Grass filed the Motion to Dismiss before or after the call from the Trustee). Docket No. 15.

29.     On November 5, 2025, attorney Jeffery Martin filed a Consent Motion to Substitute Attorney on behalf of his firm. Docket No. 18. The Court granted this Motion on November 7, 2025. Docket No. 21.

30.     Mr. Grass paid Mr. Martin a $3,000.00 retainer out of his own pocket for Mr. Martin's representation of Ms. Spriggs.

31.     On December 16, 2025, Ms. Spriggs filed her Schedules in the case. Docket No. 36. Her Schedules I and J stated that she has negative monthly net income of ($153.45). *Id*., Schedule J, Line 23c.

32.     The Court granted the Debtor's Motion to Dismiss the case voluntarily. Docket No. 42. The case was dismissed without prejudice. *Id.* The Court retained jurisdiction over this matter for the purpose of addressing the Order to Show Cause. *Id*.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the bankruptcy estate). The Court also has inherent powers to supervise the conduct of attorneys who appear before the Court. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–44 (1991).

5

This Court looks to the Virginia Rules of Professional Conduct for the ethical standards governing the conduct of attorneys. Local Rule 2090-1(I).

### I.      Problems with the Filing.

There were several problems with Ms. Spriggs' bankruptcy filing, outlined below. The Court finds that these issues would have been easily recognized by an attorney practicing before this Court representing consumer debtors. The failure to do so on Mr. Grass's part, the Court concludes, fell below the standard of competency required by Rule 1.1 of the Virginia Rules of Professional Conduct. ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.")[3]

### A.      Lack of Pre-Petition Credit Counseling.

Ms. Spriggs did not take the credit counseling course before Mr. Grass filed the Voluntary Petition on her behalf. Mr. Grass testified that, in his view, the imminent Shellpoint foreclosure created "exigent circumstances" that excused the pre-petition credit counseling requirement, and that Ms. Spriggs could have taken the course within the 30 days after the Petition was filed. This was not correct, and in the Court's view, reflects a poor understanding of the credit counseling requirement.

The term "exigent circumstances" is not defined by the Code. The ordinary definition of exigent means

> A state of pressing need; a time of extreme necessity; a critical occasion, or one that requires immediate action or aid; an emergency, an extremity[.]

---

[3] Had Mr. Grass known of Clear Sky's involvement as the Assignee of the Contract, Mr. Grass would have been violated Rule 1.7(a) of the Virginia Rules ("Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.") The Court concludes that Mr. Grass did not know of Clear Sky's involvement until after he filed the case, and when he did learn that Clear Sky was involved, he withdrew and referred the case to Mr. Martin.

Oxford University Press. (n.d.). Exigent, n.², 1. In *Oxford English Dictionary*. Retrieved January

5, 2026, from https://doi.org/10.1093/OED/2416724404.

   Although there is some disagreement in the case law, a pending foreclosure is not "exigent"

because homeowners in Virginia are entitled to at least 60 days' notice of the foreclosure. Va. Code

Ann. § 55.1-321(A). *See Hedquist v. Fokkena (In re Hedquist)*, 342 B.R. 295, 298 (B.A.P. 8th Cir.

2006) ("[W]e have previously held that a bankruptcy court does not abuse its discretion in finding

that a debtor's waiting to file a bankruptcy petition until the eve of a foreclosure, when the debtor

has had ample notice of the foreclosure, does not constitute exigent circumstances meriting a

waiver of the prebankruptcy briefing requirement."); *In re Afolabi,* 343 B.R. 195 (Bankr. S.D. Ind.

2006). Otherwise, every debtor who is subject to a pending foreclosure (in other words, the vast

majority of Chapter 13 debtors in this court) would be able to evade the credit counseling

requirement by claiming exigent circumstances.

   Moreover, Ms. Spriggs did not in fact request credit counseling within seven days of the

filing; she was completely unaware of the requirement. *See* 11 U.S.C. § 109(h)(3)(A)((ii)

(certification must state that "the debtor requested credit counseling services from an approved

nonprofit budget and credit counseling agency, but was unable to obtain the services . . . during

the 7-day period beginning on the date on which the debtor made the request"). A number of cases

hold that an imminent foreclosure may constitute exigent circumstances, but most of these courts

dismiss the case because the debtor failed to request credit counseling within seven days of the

filing. *See In re Diaz*, 2019 WL 7602243, n.1, 2019 Bankr. LEXIS 2689* (Bankr. D.C. 2019)

("Courts are not in agreement whether an extremely imminent foreclosure sale may be considered

an exigent circumstance," but finding debtor's certification to be insufficient); *In re Wright*, 412

B.R. 767, 769 (Bankr. E.D. Va. 2008) (holding that "[a]n impending foreclosure—which is what

the court understands the debtor to mean when he states that the property was going up for sale—

would generally qualify as an exigent circumstance," but further holding that "the mere fact that a

foreclosure was scheduled to take place before he could obtain the counseling is not sufficient—a

debtor who waits until the last minute to seek counseling will not be exempt unless the agency is

so backed up that it cannot provide the counseling within five days of the request.")[4]

Experienced consumer bankruptcy practitioners should know that a pending foreclosure

would not constitute exigent circumstances in this Court, and that the failure to seek credit

counseling within the seven days before the petition would be grounds for dismissal of the case.

In this regard, Mr. Grass fell short of what is required of a consumer debtor's attorney in this Court.

B.      *The Clear Sky Conflict.*

The fact that Clear Sky was the Assignee of the Contract with Ms. Spriggs is concerning

to the Court. It would have created a conflict of interest for Mr. Grass and his law firm, had he

known of Clear Sky's involvement in the sale. The Court, however, accepts Mr. Grass's unrebutted

testimony that he did know of Clear Sky's involvement until the Trustee called him after the sale

had closed.

The Court finds that Mr. Grass's simultaneous representation of Clear Sky does not provide

a basis for a sanction.

C.      *Ms. Spriggs Lacked Sufficient Income to Fund a Chapter 13 Plan.*

As it turned out, Ms. Spriggs had negative monthly net income of ($153.45). Schedule J,

Line 23c. Ms. Spriggs, therefore, had no ability to achieve confirmation of a feasible Chapter 13

Plan.[5]

---

[4] A foreclosure could be considered "exigent" where, for example, the creditor used the wrong address, and the debtor had no notice of the foreclosure through no fault of her own.

[5] In fact, her negative monthly net income is slightly understated because she used her mortgage payment of $1,383.73 (Schedule J, Line 40, as opposed to the $1,500.00 in rent under the Contract.

Consumer debtor attorneys are charged with the responsibility of not only getting their

clients into a bankruptcy, but in a Chapter 13 or 11 case, advising the client on the realistic

possibilities of gaining confirmation of a feasible Plan. The fact that Ms. Spriggs had negative net

income should have been a red flag to Mr. Grass that she could not obtain confirmation of a Plan.

Chapter 13 is not a place to "park" clients while they explore sale or refinance options.

The Court finds that Mr. Grass did not meet the standards expected of a consumer

bankruptcy attorney in this Court.

D.      *The Post-Petition Sale of the Property.*

The Court is concerned that Ms. Spriggs sold the Property post-petition, without Court

approval. The Court is satisfied, however, that Mr. Grass did not know that Ms. Spriggs was going

to close on the sale, and when he did learn of the closing (to Clear Sky) he withdrew from the case.

II.      **Mitigating Factors**.

The Court is required to consider aggravating and mitigating factors in determining any

possible sanctions. *In re Liotti*, 667 F.3d 419 (4th Cir. 2011) ("[W]e are obliged in formulating the

appropriate discipline to consider both aggravating and mitigating factors, as well as the potential

or actual injury resulting from the misconduct").

First, there are no aggravating factors in this case. Although Ms. Spriggs is elderly, she was

not taken advantage of by Mr. Grass's representation. She wanted to stop the foreclosure, and Mr.

Grass accomplished that for her. No party suffered any injury as a result of the filing.

Second, there are mitigating factors that the Court must take into account: (a) Mr. Grass

has an unblemished record of practice before this Court; (b) Mr. Grass immediately withdrew from

his representation and referred the matter to Mr. Martin, as soon as he learned of his client's, Clear

Sky's, involvement; and (c) Mr. Grass paid Mr. Martin's $3,000.00 retainer out of his own pocket

(recall that Mr. Grass did not receive a retainer from Ms. Spriggs). This is precisely what Mr. Grass

should have done, and perhaps a bit more, when it came to the retainer.

The Court considers the above mitigating factors in fashioning the disciplinary remedy in

this case.

### III.    The Court Will Decline to Refer the Matter to the State Bar.

Finally, this Court has on occasion referred disciplinary matters to the Virginia State Bar

for further disciplinary action in its discretion. *See, In re Mendieta*, Case No. 21-11518-BFK,

Docket No. 127 (referring attorney Ali Alavi to the State Bar);  *In re Cynn*, Case No. 22-10752-

BFK, Docket No. 55 (referring attorney Eugene Jin-Ho Cynn to the State Bar); *In re Herrera*, Case

No.  21-11250-BFK, Docket No. 22 (referring attorney Guillermo D. Uriarte to the State Bar). The

Court generally refers attorneys to the State Bar where it concludes that there is a continuing danger

to the public in allowing the attorney to practice law outside of this Court's bankruptcy court

jurisdiction.

The Court, having heard the evidence, finds that there is no continuing danger to the public

in this case. The Court concludes that Mr. Grass has heard the Court's concerns, and is chastened

by this incident. It is unlikely that Mr. Grass will file any further consumer cases, at least without

some additional training. There are mitigating factors, which the Court has outlined above.

On balance, the Court finds that the public interest is not served by a referral to the Virginia

State Bar.

CONCLUSION

It is therefore **ORDERED**:

1.      Mr. Grass is publicly reprimanded for his actions in this case.

2.      The Clerk will mail copies of this Order, or will provide CM-ECF notice of its entry,

to the parties below.

Date: Jan 5 2026 _____

Alexandria, Virginia

/s/ Brian F Kenney _____
HONORABLE BRIAN F. KENNEY
CHIEF U.S. BANKRUPTCY JUDGE

Entered On Docket: Jan 5 2026

Copies to:
Celestine Spriggs
212 E. Staunton Avenue
Sterling, VA 20164
*Chapter 13 Debtor*

Jeffery T. Martin, Jr.
Martin Law Group, P.C.
8065 Leesburg Pike
Suite 750
Vienna, VA 22182
*Counsel to Chapter 13 Debtor*

Thomas P. Gorman
1414 Prince St.
Suite 202
Alexandria, VA 22314
*Chapter 13 Trustee*

Matthew W. Cheney
1725 Duke Street
Suite 650
Alexandria, VA 22314
*U.S. Trustee*

Edward J. Grass
9501 Burke Road
#10784
Burke, VA 22015